IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

APPEAL NO. 22-1858

CARMEN QUINTANA-DIEPPA,
Plaintiff-Appellant,

**v.**

DEPARTMENT OF THE ARMY,
Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BRIEF FOR APPELLEE

W. Stephen Muldrow
United States Attorney

Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division

Francisco A. Besosa-Martínez
Assistant United States Attorney
U.S. Attorney's Office
Torre Chardón, Room 1201
350 Carlos Chardón Street
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

# TABLE OF CONTENTS

Table of Authorities ................................................................ iii

Jurisdictional Statement ........................................................1

Statement of the Issue on Appeal ........................................2

Statement of the Case ...........................................................3

Summary of the Argument....................................................22

Argument ...............................................................................24

**The district court properly granted the government's motion for summary judgment because the evidence did not establish a genuine issue of material fact as to any of Quintana's discrimination and retaliation claims, Quintana failed to establish a *prima-facie* case, and in any event failed to show the government's proffered reasons were pretext.**

Issue.................................................................................24

Standard of Review .........................................................24

Discussion .......................................................................25

Conclusion.............................................................................54

Certificate of Compliance .....................................................55

Certificate of Service ............................................................56

# TABLE OF AUTHORITIES

## <u>FEDERAL CASES</u>

Acevedo–Parrilla v. Novartis Ex–Lax, Inc., 696 F.3d 128 (1st Cir. 2012) ......29

Advanced Flexible Circuits, Inc. v. GE Sensing & Inspection Techs. GmbH, 781 F.3d 510 (1st Cir. 2015) ......................................................................... 26-27

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) .....................................25

Babb v. Wilkie, 140 S. Ct. 1168 (2020).................................................................51

Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6 (1st Cir. 2004) .....................46

Cham v. Station Operators, Inc., 685 F.3d 87 (1st Cir. 2012)..........................50

Clark County Sch. Dist. v. Breeden, 532 U.S. 268, (2001) ...............................47

CMI Capital Mkt. Inv., LLC, 520 F.3d .................................................................29

Fennell v. First Step Designs, Ltd., 83 F.3d 526 (1st Cir. 1996) ......................52

Gómez González v. Rural Opportunities, Inc., 626 F.3d 654 (1st Cir. 2010) ................................................................................49

Gross v. FBL Fin. Servs., Inc., 129 S.Ct. 2343 (2009) ........................................51

Hughes v. Derwinski, 967 F.2d 1168 (7th Cir. 1992) ........................................47

Kearney v. Town of Wareham, 316 F.3d 18 (1st Cir. 2002) .............................25

Lebofsky v. City of Philadelphia, 394 F. App'x 935 (3d Cir. 2010) ...............42

López-Hernández v. Terumo Puerto Rico LLC,

64 F.4th 22 (1st Cir. 2023) ................................................................30

Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5 (1st Cir. 1990) .....25

Mesnick v. Gen. Elec. Co., 950 F.2d 816 (1st Cir. 1991)............................ 49, 52

Morales v. AC Orssleff's EFTF, 246 F.3d 32 (1st Cir. 2001) ...........................37

Morgan v. Hilti, Inc., 108 F.3d 1319 (10th Cir. 1997)........................................49

Murray v. Kindred Nursing Centers W. LLC, 789 F.3d 20 (1st Cir. 2015)....25

Noviello v. City of Bos., 398 F.3d 76 (1st Cir. 2005) ........................................25

O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996) ...........50

Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc.,
    447 F.3d 105 (1st Cir. 2006) ................................................................37

Puerto Rico American Ins. Co. v. Rivera-Vázquez,
    603 F.3d 125 (1st Cir. 2010) ................................................................26

Randolph v. Ohio Dept. of Youth Services, 453 F.3d 724 (6th Cir. 2006) .....46

Reyes v. Prof'l HEPA Certificate Corp., 74 F.Supp.3d 489 (D.P.R. 2015) .....37

Richmond v. ONEOK, Inc., 120 F.3d 205 (10th Cir. 1997)...............................47

Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77 (1st Cir. 2018)............45

Santangelo v. New York Life Ins. Co., 785 F.3d 65 (1st Cir. 2015) ........... 48-49

Severino v. UTC Aerospace Sys., 52 F.4th 448 (1st Cir. 2022) ........................29

Skalsky v. Independent School Dist. No. 743,

iv

772 F.3d 1126 (8th Cir. 2014)...................................................................46

St. Mary's Honor Center v. Hicks, 509 U.S. 501 (1993)....................................53

Suárez v. Pueblo Int'l, Inc., 229 F.3d 49 (1st Cir. 2000) ..................................43

United States v. Henry, 848 F.3d 1 (1st Cir. 2017) ...........................................42

Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6 (1st Cir. 2007)...........43

Velazquez-Ortiz v. Vilsack, 657 F.3d 64 (1st Cir. 2011) ..................................25

Vélez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441 (1st Cir. 2009) ......47

Webber v. Int'l Paper Co., 417 F.3d 229 (1st Cir. 2005)...................................52

Woodman v. Haemonetics Corp., 51 F.3d 1087 (1st Cir. 1995) .....................44

Woods v. Friction Materials, Inc., 30 F.3d 255 (1st Cir. 1994).........................44

## FEDERAL STATUTES

18 U.S.C. § 3231.................................................................................................1

28 U.S.C. § 1291.................................................................................................1

## FEDERAL RULES

D.P.R. L. R. 56(c)..............................................................................................26

D.P.R. L. R. 56(e).......................................................................................... 16, 26

Fed. R. App. P. 4(a)(1)(B)(ii).............................................................................1

Fed. R. App. P. 10(a) ........................................................................................39

Fed. R. App. P. 30(f) .......................................................................33

Fed. R. Civ. P. 56(c)(3).................................................................35

## <u>OTHER AUTHORITIES</u>

6 Emp. Coord. Employment Practices § 57:20 ..................................................50

21A FEDERAL PROCEDURE § 50:967 (L. Ed.) .......................................... 45-46

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction. 18 U.S.C. § 3231. This Court has appellate jurisdiction of this civil appeal. 28 U.S.C. § 1291.

After the district court entered final judgment granting summary judgment for the Army, plaintiff-appellant Carmen Quintana-Dieppa filed a timely notice of appeal. (Add. 41; DE 168).[1] Fed. R. App. P. 4(a)(1)(B)(ii) (stating any party may file a notice of appeal "within 60 days after entry of the judgment" in a civil case when one of the parties is "a United States agency").

---

1.     References to the record will be as follows: DE (Docket Entry or Entries in District Court Civil Case No. 19-1277); AB (Appellant's Brief); Add. (Appellant's Addendum); AA (Appellant's Appendix).

STATEMENT OF THE ISSUE ON APPEAL

**Did the district court err in granting the Army's motion for summary judgment where the evidence did not establish a genuine issue of material fact as to any of Quintana's discrimination and retaliation claims, Quintana failed to establish a *prima-facie* case, and in any event failed to show the Army's proffered reasons were pretext?**

## STATEMENT OF THE CASE

### I.    Quintana Goes to EEOC and The Army's First Investigation

Quintana, a 62-year-old Puerto Rican female, was employed by the Department of the Army (the "Army" or "Agency") as a Child Youth and School Services ("CYSS") Coordinator at Fort Buchanan in Puerto Rico. (DE94 at 2). In September of 2014, Quintana filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on national origin. (DE94 at 2). Ultimately, in July 2017, an administrative judge found that no such discrimination had taken place and entered a judgment in favor of the Army. (DE94 at 3).

Meanwhile, the 81st Regional Support Command in Fort Jackson, South Carolina received allegations of mismanagement and poor work conditions within Fort Buchanan's Family and Morale, Welfare and Recreation ("FMWR") Division. (DE94 at 3). As a result of these allegations, in May 2016 and while Quintana's EEOC complaint was still pending, the 81st Regional Support Command launched an investigation into the FMWR supervisory chain, which included Quintana. (DE94 at 3). Regarding Quintana specifically, the investigation sought to determine whether she

had "violated [Army regulations] by not treating her subordinates with dignity and respect, characterized by harassing, threatening or intimidating behavior and language with specific instances of abuse of authority, disrespect, threats, fear tactics, favoritism, intimidation and retaliation." (DE94 at 3).

At the end of the investigation, after interviewing various employees and supervisors, the investigating officer concluded that Quintana had "not always treat[ed] subordinates with dignity and respect or foster a healthy command climate" and that her "authoritative and brash leadership style [had] fostered a toxic work environment," noting that some of her subordinates had described her interviews as a "tyrant" and "toxic leader." (DE94 at 4; DE94-3 at 14). Moreover, the investigative officer recommended that Quintana "be removed from the Supervisor position … to a less or non-supervisory position within the FMWR." (DE94-3 at 15).

The investigation also found that another supervisor, Dallas Petersen, did not treat his subordinates with dignity and respect. (DE94-3 at 11). Petersen also showed favoritism toward certain employees by, for example, giving them substantial salary increases that went against the established

rules and regulations. (DE94-3 at 12-13).

## II.    Fort Jackson Investigation Results Lead to Second Investigation

In June 2016, the Commanding General at Fort Jackson forwarded the results of the investigation to the Garrison Commander at Fort Buchanan for "his independent determination regarding any appropriate disciplinary or corrective actions." (DE94 at 4; DE 94-3 at 13). In turn, the Fort Buchanan Garrison Commander at the time, Col. Michael T. Harvey, requested a second investigation into Quintana's treatment of her subordinates. (DE94 at 5). Before that second investigation began, Quintana's then-supervisor Carter forwarded her an email regarding a CYSS Coordinator position in Aberdeen Proving Grounds, Maryland. (DE94 at 10).

The second investigation took place from August to October 2016 and confirmed the findings of the first investigation. (DE94 at 5). Specifically, the investigative officers noted that 27 individuals "confirmed having been the object of or having witnesses disrespectful or disparaging behavior" by Quintana and that "favoritism, disrespect, intimidating language/behavior, and retaliation were most prominent." (DE94 at 5). Like the results of the first investigation, the second investigation concluded Quintana treated her

subordinates with lack of dignity and respect." (DE94 at 6). And consistent with the first investigation, the second investigation noted that Quintana's "pattern of misconduct…warrants disciplinary action." (DE94 at 6).

### III.   Performance Evaluation, Promotion Refusal, and Reassignment

In January 2017, Quintana received a performance evaluation for the period of July 1, 2015, to June 30, 2016. (DE94 at 9). Her supervisor rated her performance as "satisfactory," given that she had met certain standards but had not expanded the youth sports and school programs and noted that the programs were "weak." (DE94 at 10). In her previous evaluation (July 1, 2014, to June 30, 2015), Quintana's performance had been rated as "outstanding." (DE94 at 10). According to Quintana's sworn testimony, it was "obvious" that the lower rating was "tied to the 15-6 [investigation] results and professional jealousy." (DE94 at 10).

Performance evaluations notwithstanding, given the results of the second investigation, the Garrison Commander at Fort Buchanan signed off on a letter of reassignment to be issued by Quintana's then-supervisor on January 25, 2017. (DE94 at 6). Issuance of the reassignment letter was delayed, however, because of a federal hiring freeze that was not set to

expire until April 2017. (DE94 at 7).

In May 2017, Quintana told her supervisor that, after reviewing a version of the CYSS manning document, she believed she had to be non-competitively promoted to a NF-05 Coordinator position. (DE94 at 11). The CYSS manning document that Quintana had reviewed to reach this conclusion, however, constituted preliminary guidance issued in advance of any mandate by the U.S. Army Installation Management Command ("IMCOM") G-9 (which commands FMWR and CYSS). (DE94 at 11). Ultimately, Quintana's supervisor did not submit an electronic request for personnel action promoting Quintana to the requested position because Fort Buchanan's CYSS program did not fit the demographics required for that position by the Army NAF Standardized Position Description. (DE94 at 12).

Thereafter, in June 2017, Quintana's supervisor vacated his position. (DE94 at 6). After reviewing the files related to the second investigation, Quintana's new supervisor signed off on a revised reassignment letter, which transferred Quintana to a newly created position with the same pay and grade. (DE94 at 8). The letter stated that, given several of the findings in the investigation report, "justification for this action is that management has

serious and substantiated concerns" about Quintana's management style and that it was "not conductive to an adequate child care [sic] environment." (DE94 at 7). After being given the letter during a meeting on November 17, 2017, Quintana was placed on a one-day administrative leave. (DE94 at 8).

### IV.    November 2018 and January Text Messages

On November 20, 2017, Quintana's supervisor sent her a text message inquiring about her whereabouts after she failed to report to work. (DE94 at 12). Quintana was not on preapproved leave or otherwise notified her supervisor that she would be taking sick leave before he sent the text message. (DE94 at 12). Quintana perceived the text message as disrespectful. (DE94 at 12).

In January 2018, given an erroneous belief that her leave had concluded the previous day, Quintana went to work after receiving a "report to work" text message from her supervisor. (DE94 at 12). After the mix up was straightened out, Quintana's supervisor sent her home. (DE94 at 12).

### V.    Quintana's Replacement

After Quintana's reassignment, her role as CYSS Coordinator was held by two Hispanic women. (DE94 at 8). First, Wendy Winston took on

Quintana's duties on a temporary basis. (DE94 at 8). Then, on January 31, 2018, Aida Aguilú, who was over 40 and just 14 months younger than Quintana, was named Acting CYSS Coordinator. (DE94 at 8). And while the permanent position was initially offered to a Hispanic male, he declined the offer, and Aguilú was formally selected to permanently fill the position around January 2019. (DE94 at 8).

## VI.    Quintana Files Suit in Federal Court

Quintana filed a discrimination lawsuit against the Army on March 28, 2019. (DE1). As is relevant to this appeal, Quintana asserted age discrimination claims pursuant to the Age Discrimination in Employment Act ("ADEA"), sex and racial discrimination claims under Title VII of the Civil Rights Act ("Title VII"), and retaliation in violation of Title VII and the Fair Labor Standards Act ("FLSA"). (DE1). She also raised a Title VII hostile work environment claim based on gender. (DE1).

In the lawsuit, Quintana based her discrimination claims on: (1) the June 2016 e-mail Quintana's supervisor sent, recommending that she apply for an open position at a different Army base; (2) the January 2017 performance evaluation in which she received a rating of "satisfactory," as

opposed to her previous "outstanding" rating on the previous year's performance evaluation; (3) her supervisor's failure to provide her with performance standards for 2017; (4) the denial of the requested NF-05 Coordinator promotion; (5) her reassignment to another position; (6) the November 2017 text message from her supervisor questioning her absence from work on a specific date; and (7) the January 2018 "report to work" text message from her supervisor. (DE1 at 8-9).

## VII.   The First Motion for Summary Judgment

The Army first moved for summary judgment in July 2020. (DE38-40). However, the district court denied it without prejudice. (DE53). The district court explained that, while it had previously set a July 2020 deadline for dispositive motions, the parties had informed a magistrate judge during a settlement conference that they were unable to complete discovery by the allotted deadline due to the Covid pandemic and needed until September 30, 2020, "then 30 days thereafter for defendant to file its motion for summary judgment, and 30 days thereafter for plaintiff to oppose the motion."(DE53). Although the magistrate judge recommended that the parties move for an extensions of case deadlines, they did not do so. (DE53).

10

The district court admonished both parties for not seeking an extension. (DE53). The district court set a status conference for October 15, 2020. (DE53).

At a subsequent status conference in January 2021, the parties informed that discovery was completed. (DE65). Motions for summary judgment were due April 16, 2021. (DE69). Two days before the due date, the Army moved for a one-week extension, citing that one of the attorneys had undergone surgery. (DE72). Quintana opposed, averring that counsel for the Army was "attempt[ing] to use [his]sister counsel [] alleged unforeseen medical issues, as pretext to further enlarge the time allowed to file its motion." (DE73 at 1). Counsels for the Army and Quintana's subsequent filings resulted in the district court referring the matter to the First Assistant United States Attorney, who promptly reassigned the case to another Assistant United States Attorney.[2] (DE85-86). The Army filed its

---

2 This referral undermines Quintana's contention that the district court's characterization of his opposition and his overall case management was in stark contrast to the way it had treated the Army's first counsel of record. (AB13). According to Quintana, counsel for the Army had allegedly engaged in stonewalling tactics and had failed to comport to the rules on numerous occasions. (AB13-14). The record shows, however, that the district court was just as stern with counsel for the Army as it was with counsel for Quintana. (DE85).

second motion for summary judgment, the subject of this appeal, one week later. (DE93).

## VIII. The Army's Second Motion for Summary Judgment

The Army moved for summary judgment, maintaining that Quintana had failed to show a *prima facie* case of discrimination or retaliation. (DE 93). First, the Agency asserted that most of the actions identified by Quintana were "actions which are not considered adverse to support a claim of discrimination, nor are they materially adverse to support a claim of retaliation." (DE93-1 at 3). Moreover, all of Quintana's claims "rest[ed] on mere speculation at best that her gender, age, race, and/or protected EEO activity motivated the actions at issue." (DE93-1 at 3). Indeed, "[e]ven after conducting full administrative investigations upon which her claims are based," the Army explained that Quintana could not "point to any evidence that even suggests a causal connection between the Agency's alleged actions and her membership in any protected class and/or her protected activity." (DE93-1 at 3).

The Army averred summary judgment should be granted as to all of Quintana's claims because she failed to "establish a *prima facie* case regarding

the events and/or the undisputed facts establish a legitimate, nondiscriminatory, nonretaliatory basis for [the Agency's] alleged actions." (DE93-1 at 3). Meanwhile, insofar as Quintana had raised a hostile work environment claim, the Army maintained is should also be dismissed because the so-called harassment Quintana complained of "was nowhere close to being objectively severe or pervasive under binding precedent" and Quintana had "fail[ed] to allege plausible discriminatory or retaliatory animus motivating the purported 'harassment.'" (DE93-1 at 3-4).

## IX.    Quintana Opposes Summary Judgment

Quintana filed an opposition to the motion for summary judgment on July 30, 2021. (DE110). She first averred that the evidence presented sufficient facts to show a *prima facie* case of age discrimination. (DE110 at 6-7). Moreover, she asserted that the evidence set forth demonstrated that any non-discriminatory basis proffered by the Army was pretextual. (DE110 at 7-8).

Quintana also claimed gender discrimination in violation of violating Title VII because she was "treated less favorably than male counterparts and exposed to disparate disciplinary procedures" when she was reassigned to

13

a non-supervisory position. (DE110 at 8). She asserted that "[n]o female employee was involved in decision making process, both decision makers were males, and involuntary reassignment was NOT recommended by report." (DE110 at 8).

As for Title VII retaliation, Quintana averred that "supervisors retaliated by subjecting her to unjust scrutiny, false allegations of misconduct and involuntary reassignment to non-supervisory newly created position, because she previously opposed unlawful workplace practices and had testified against her employer." (DE110 at 9). Quintana further contended that "the decision to reassign her was taken without any prior history of performance issues, nor AR investigation report including any reassignment as a recommendation." (DE110 at 10).

Finally, Quintana contended the actions taken by the Army "were NOT based on legitimate and non-retaliatory reasons, because the AR Investigation Report did NOT include any recommendation to remove and/or reassign Carmen [Quintana] Dieppa to a nonsupervisory position." (DE110 at 11). Moreover, Quintana asserted that she did not have "to present additional evidence of discrimination beyond that necessary to prove that

the proffered reasons are pretextual." (DE110 at 11). She claimed there was a causal connection between the reassignment decision and her EEO case because the reassignment decision was made in January 2017 while her EEO case was still pending. (DE110 at 12).

## X.    District Court Grants Government's Summary Judgment Motion

After reviewing the parties' submissions, the district court granted the Army's motion for summary judgment. (DE163). Before getting into the merits, however, the district court addressed some preliminary matters relating "fatal shortcomings in Quintana's opposition." (DE163 at 4). First, the district court stated that Quintana had "glaringly failed" to "set forth any proposed uncontested material facts (or rebukes thereto) in numbered paragraphs neatly containing the facts in question, devoid of argumentation and accompanied by specific citations to record materials of evidentiary value that either prove a proposed fact or disprove an opposed one." (DE163 at 4). Specifically, where she had opposed or qualified statements of uncontested facts proposed by the army, Quintana "refer[red] to record citations that d[id] not lend support to [her] propositions…., include[d] propositions that d[id] not contradict the Army's…., or for[went] citations to

15

the record altogether." (DE163 at 5). Accordingly, because Quintana failed to properly contest the Army's set of facts, the district court deemed them uncontroverted. (DE163 at 5-6).

Moreover, Quintana also attempted to add facts through her responses (whether oppositions or admissions) to the Army's statements of uncontested facts. (DE163 at 6). She did not put forward these additional facts in a separate section "in separate numbered paragraphs and supported by a record citation" as required by the rules. (DE163 at 6). D.P.R. L. R. 56(e). Thus, the district court "disregarded" all the additional facts that Quintana set forth in her opposition to the Army's proposed facts. (DE163 at 7).

At this point, the district court noted "that this [wa]s not the first time [it] ha[d] needed to call attention to plaintiff's counsels' performance or conduct in this case." (DE163 at 7). It then cited to previous orders where it had warned Quintana's counsel that it should not continue to make "unsubstantiated" and "unfounded" allegations and "mischaracterizations of the record." (DE163 at 7-8). The district court then proceeded to make the pertinent factual findings from the uncontested statement of facts. (DE163 at 8-14).

16

Moving on to the merits, the district court was unpersuaded by Quintana's ADEA and Title VII Discrimination claims. (DE163 at 14-29). Regarding Quintana's reassignment to a non-supervisory position, the district court stated that Quintana "ha[d] not pointed to record materials, nor otherwise made an evidentiary showing, that she met the employer's legitimate job performance expectations." (DE163 at 17). All she could muster was the assertion that she had worked for the Army for more than 30 years and had no prior history of poor performance or admonishments. (DE163 at 18). But Quintana did not submit these matters as material facts to the district court and "did not reference record materials to that effect." (DE163 at 18). "Such a statement, unsupported by record materials and unsubmitted as a material fact, is inconsequential at the summary judgment stage." (DE163 at 18). In contrast the Army "ha[d] flooded the record with materials of evidentiary value" pertinent to the period during which the decision to reassignment Quintana was made "that support the proposition that Quintana was not meeting her employer's legitimate job expectations." (DE163 at 17-18).

17

The district court was equally unmoved by Quintana's failure to promote claim, finding she had failed to make a *prima facie* case "because she d[id] not point to evidence in the record showing that anybody was promoted, much less somebody similarly or less qualified to Quintana who was outside of her age, sex, or race protected groups." (DE163 at 22). Furthermore, Quintana had also not set forth any facts or evidence showing that she was qualified for the promotion, or that said position even existed at Fort Buchanan. (DE163 at 22).

The district court noted that, under binding precedent, it could not consider the Army's alleged nondiscriminatory reason for taking an adverse action when analyzing whether Quintana had made *prima facie* case. (DE163 at 19). However, because Quintana altogether failed to show "whether she was meeting her employer's legitimate expectations," "rather than accepting the Army's stated reasons for transferring Quintana, the Court [] instead h[eld] simply that Quintana failed to satisfy even the low burden placed upon her by the *McDonnell Douglas* framework at the *prima facie* step." (DE163 at 19-20). Nonetheless, the district court went through the *McDonnell Douglas* framework "for the sake of ensuring that Quintana's performance

18

record was not tarnished by the Army as a pretext to enable a liability-free transfer." (DE163 at 20-21).

In an exercise of thoroughness, the district court further determined that even if Quintana had made a *prima facie* showing as to any of her claims, they would still fail the rest of the *McDonnell Douglas* burden-shifting framework. (DE163 at 22-24). The district court also found that Quintana had failed to demonstrate that the Army's stated reasons for its decisions were a pretext for discrimination. (DE163 at 24-29). Accordingly, the district court dismissed with prejudice all of Quintana's ADEA and Title VII discrimination claims. (DE 163 at 28-29).

Moving on the Quintana hostile work environment claim, the district court noted that Quintana had not responded to the Army's argument that summary judgment should be granted because "the 'harrassment' she complain[ed] of c[a]me[] nowhere close to being objectively severe or pervasive under binding precedent." (DE163 at 29). And after going through the events Quintana had pointed out in support of her hostile work environment claim and drawing all possible inferences that the events occurred as Quintana claimed, the district court agreed that they did not

satisfy the "severe or pervasive" threshold required under the case law. (DE163 at 29-31). And in any event, the Army "entered evidence into the record articulating legitimate, non-discriminatory reasons" for its decisions, "which remain uncontested." (DE163 at 32). Thus, the district court dismissed with prejudice Quintana's hostile work environment claim. (DE163 at 33).

Finally turning to retaliation, after noting that Quintana's 2014 EEOC complaint was premised on national origin discrimination, the district court dismissed with prejudice Quintana's FLSA retaliation claim because FLSA did not cover national original discrimination. (DE163 at 33). As for Quintana's Title VII discrimination claim, the district court "harbor[ed] no doubt" that Quintana engaged in protected activity and "assume[ed] without deciding, only for argument purposes, that she was subjected to adverse employment actions." (DE163 at 35). Under that framework, the district court nevertheless found that Quintana failed to make a *prima facie* showing because there was no causal connection between the alleged protected activity and the alleged adverse actions nor was there evidence

showing Quintana was treated differently from fellow employees. (DE163 at 35-38).

But even if Quintana had made a *prima facie* showing, the district court found that the rest of the *McDonnell Douglas* burden-shifting framework worked against her. (DE163 at 38-39). In short, regarding the Army's proffered nondiscriminatory reasons, Quintana failed to "elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive," or provide record material evidencing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-[retaliatory] reasons." (DE163 at 39). Accordingly, as it had done with all of the other claims, the district court dismissed with prejudice Quintana's Title VII retaliation claims. (DE163 at 40).

Thus, the district court granted the Army's motion for summary judgment in its entirety and dismissed all of Quintana's claims. (DE163 at 40). This appeal ensued.

21

## SUMMARY OF THE ARGUMENT

Summary judgment for the government was proper as to all of Quintana's discrimination and retaliation claims. For starters, the district court did not abuse its discretion in finding that Quintana had failed to adequately contest the Army's proposed uncontested material facts. Quintana's oppositions or qualifications failed to comply with Local Rule 56 because they either did not include record citations or referred to record citations that either did not support her propositions or did not contradict the Army's propositions. Quintana also failed to set forth her own proposed set of material facts in a separate documents and in separate numbered paragraphs supported by record citations. This Court has already confronted and affirmed a district court's Rule 56 holdings against a non-moving party in similar situations. Accordingly, this Court should find the district court did not abuse its discretion in accepting the Army's proposed facts as stated.

The district court also did not improperly make credibility determinations. Nor did its use of the terms "transfer" and "reassignment"

in an interchangeable manner, given their similar definitions, show that it failed to make all inferences in favor of Quintana.

Finally, notwithstanding all of the above, Quintana's claims fail on the merits. First, she falls short of establishing a prima facie case of discrimination or retaliation. And even if she could, the Army provided a legitimate, non-discriminatory and non-retaliatory reason for its adverse employment decisions. Namely, that it had "serious and substantiated concerns" regarding Quintana's management style and treatment of employees under her supervision. And Quintana fails to provide any evidence that the reason proffered by the Army was pretextual.

Accordingly, this Court should affirm.

ARGUMENT

**The district court properly granted the government's motion for summary judgment because the evidence did not establish a genuine issue of material fact as to any of Quintana's discrimination and retaliation claims, Quintana failed to establish a *prima-facie* case, and in any event failed to show the government's proffered reasons were pretext.**

## Issue

Quintana contends the district court erred in granting summary judgment for the Army because it purportedly took on the role of factfinder in the face of alleged disputed material facts. (AB29-36). She also avers the district court improperly assessed the credibility of witness testimony and failed to make all material inferences in her favor. (AB36-42). Finally, Quintana claims the district court erred in finding that she had not proffered sufficient evidence for a jury to decide whether her reassignment was adverse and retaliatory. (AB42-43). The record shows Quintana is wrong on all fronts.

## Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*, "scrutiniz[ing] the evidence in the light most agreeable to the

nonmoving party, giving that party the benefit of any and all reasonable inferences." *Murray v. Kindred Nursing Centers W. LLC*, 789 F.3d 20, 25 (1st Cir. 2015) (quoting *Noviello v. City of Bos.*, 398 F.3d 76, 84 (1st Cir. 2005)). It will affirm if the record, viewed in such a manner, "reveals no genuine issue of material fact and demonstrates that the movant is entitled to judgment as a matter of law." *Velazquez-Ortiz v. Vilsack*, 657 F.3d 64, 70 (1st Cir. 2011). A genuine issue of material fact arises when a nonmovant presents "definite, competent evidence" that, if credited, could lead "a factfinder [to] resolve the case in favor of the nonmovant." *Id.* (quoting *Kearney v. Town of Wareham*, 316 F.3d 18, 22 (1st Cir. 2002)).

In assessing whether there is an issue of material fact, courts pay short shrift to "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

**<u>Discussion</u>**

## A. The district court did not undertake the role of factfinder

Contrary to what Quintana claims, the district court at no point assumed the role of factfinder when granting the Army's motion for summary judgment. Rather, as the district court explained, there was no factfinding to be done because Quintana "fail[ed] to properly contest the Army's proposed uncontested material facts." (DE163 at 6). Specifically, under Local Rule 56(c),

> [a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts supporting the motion for summary judgment… Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule…

D.P.R. L. R. 56(c). This Court has explained that litigants who ignore anti-ferret rules such as this do so "at their peril," *Puerto Rico American Ins. Co. v. Rivera-Vázquez*, 603 F.3d 125, 131 (1st Cir. 2010), because a district court "shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." D.P.R. L.R. 56(e). Non-compliance with Local Rule 56 gives the district court authority to accept the moving party's facts as stated. *Advanced Flexible*

26

*Circuits, Inc. v. GE Sensing & Inspection Techs. GmbH*, 781 F.3d 510, 521 (1st Cir. 2015). And this Court grants that decision, rooted in the district court's interpretation of its own local rules, a "special degree of deference." *Id.*

Here, the district court did not abuse its discretion in accepting the Army's facts as stated (which were supported by record evidence), given that Quintana "glaringly failed" to comply with Local Rule 56. Not only did Quintana fail to provide her own undisputed facts, some of her oppositions or qualifications to the Army's proposed facts did not include record citations. And when they did, most of the record citations either did not support her propositions or did not contradict the Army's propositions. (DE163 at 5). For instance, the Army's Statement of Undisputed Fact No. 8 states that the Army's first investigation into allegations of mismanagement and poor work conditions within Fort Buchanan's Family and Morale, Welfare and Recreation ("FMWR") Division targeted that division's supervisory chain of command, which included Quintana and two others. (DE94 at 2). Quintana's response: "No. I did not know being one of the subjects for this investigation." (DE110-1 at 4).

But as the district court pointed out, the Army's statement of fact had nothing to do with Quintana's knowledge. (DE163 at 6). Whether Quintana knew of the investigation had no bearing on its existence. Moreover, none of the record citations that Quintana provided, including her own sworn statement (DE110-3 at 1-3), supported her contention that she did not know of the investigation. In fact, Quintana's sworn statement solely refers to the second investigation, conducted by Fort Buchanan, contending that it was in retaliation for having filed a hostile work environment complaint with the EEOC. (DE110-3 at 1-3).

Furthermore, Quintana set forth additional, and unsupported, facts throughout her opposition to the Army's proposed facts. These additional facts, however, had to be set forth in a separate section, "in separate numbered paragraphs and supported by a record citation" as required by Local Rule 56(c). D.P.R. L. R. 56(c). And while Quintana did include a separate section with other additional facts, they were not set forth in separate numbered paragraphs, as required by Local Rule 56. This made the Army's task of responding to those facts, and the district court's job of determining the disputed facts anything but straightforward.

This Court confronted a similar situation in *Acevedo–Parrilla v. Novartis Ex–Lax, Inc.*, 696 F.3d 128, 137 (1st Cir. 2012), where the nonmoving party "included additional information as to each opposed fact that did not specifically correlate to [the moving party's] proposed facts." There, this Court concluded that "the district court, in an appropriate exercise of its discretion, ruled that it would disregard any additional facts provided by [the nonmoving party] when denying or qualifying [the moving party's] statement of uncontested facts." *Id.*

Moreover, the district court's opinion here did not "fall[] short" by not going through each of Quintana's faulty oppositions, statements, and record citations one-by-one, and explaining how they were deficient. (AB32). Requiring the district court to engage in such an exhaustive exercise would defeat the purpose of the anti-ferret rule, which is "intended to protect the district court from ferreting through the summary judgment record in search of disputed material facts and prevent litigants from shifting that burden onto to the court." *Rodríguez-Severino v. UTC Aerospace Sys.*, 52 F.4th 448, 458 (1st Cir. 2022) (citing *CMI Capital Mkt. Inv., LLC*, 520 F.3d at 62 ("The purpose of this rule is to relieve the district court of any responsibility to ferret

through the record to discern whether any material fact is genuinely in dispute")).

Furthermore, rather than lacking any discussion or analysis as to why Quintana failed to properly contest the Army's proposed facts (AB34), the district court's opinion thoroughly explained its reasoning. Indeed, this Court recently followed the same mold as the district court here. In *López-Hernández v. Terumo Puerto Rico LLC*, 64 F.4th 22, 26 (1st Cir. 2023), this Court stated that Local Rule 56 violations were "astoundingly common and constitute an unnecessary burden to the trial court's docket and time, and frequently make their way before us for review." And similar to the district court's opinion here, it then proceeded to explain in general terms the numerous ways in which the nonmoving party's opposition ran afoul of Local Rule 56, yet noted just two specific examples of such non-compliance in a footnote. *Id.* at 27 n.1. This was sufficient for this Court to conclude in *López-Hernández* that the non-moving party had not "properly controvert[ed] [the moving party's] statement of uncontested facts" and to deem those facts as admitted under Local Rule 56. *Id.* The same result should be reached here.

30

Meanwhile, Quintana's contention that the district court erred by disregarding her statements of additional facts because she had provided citations for all of them (AB35-36) misses the mark. Citations alone are insufficient. Citations must be to portions of the record that support her propositions. That she did not do. Indeed, as the district court noted, Quintana copy-pasted the same four record citations multiple times throughout her oppositions without regard to the matters asserted. (DE163 at 6). And the citations were to whole documents, some spanning dozens of pages. Simply put, given Quintana's non-compliance with Local Rule 56, the district court did not engage in any factfinding.

Accordingly, consistent with binding precedent, this Court should find that the district court did not abuse its discretion in accepting the Army's proposed facts as stated.

## B. The district court did not make any credibility determinations and thereby err.

According to Quintana, the district court should not have afforded the testimony of her subordinates any "evidentiary value" because their statements were purportedly hearsay that "[we]re not her actual employer's performance evaluations and [the Army] failed to support [its proposed

31

statements of fact] with performance evaluations." (AB37). Quintana misses the mark. The district court did not make any credibility determinations. Instead, it relied on the findings in the final investigation report that Quintana failed to properly dispute.

For instance, in her opening brief, she claims that these were properly refuted because her former supervisor "was not aware of any problem," had not issued her any performance standards or given her a performance evaluation in 2017 prior to her reassignment. (AB37). Furthermore, the supervisor that ultimately signed off on her reassignment did not give her a written admonishment prior to reassignment nor placed her in a personal improvement plan. (AB37). But as was the case in the district court, here Quintana again fails to cite specific portions of the record where one can find support for these claims. She merely states that these can be found in certain pages of her supervisors' deposition transcripts. (AB37). However, she does not point out the specific district court docket entries where these portions of the transcripts can be found.

Indeed, Quintana did not even file an appendix with this Court, as required by Rule 30 of the Federal Rules of Appellate Procedure. Pursuant

to Rule 30(a)(1), "[t]he appellant must prepare and file an appendix to the briefs containing: (A) the relevant docket entries in the proceeding below; (B) the relevant portions of the pleadings, charge, findings, or opinion; (C) the judgment, order, or decision in question; and (D) other parts of the record to which the parties wish to direct the court's attention. And while the rules allow this Court to "dispense with the appendix and permit an appeal to proceed on the original record," Fed. R. App. P. 30(f), Quintana's reference to pages in her supervisors' deposition transcripts, without citation to where specifically in the district court docket these can be found make this Court's ability to assess her claims (and the Army's ability to respond) virtually impossible. In fact, although she produces these transcripts in their entirety, Quintana filed the pages out of order. For instance, in DE110-6 at 7, Quintana produced pages 9-12 (4 pages of deposition transcript in one page) of Supervisor Carter's deposition transcripts. In the page immediately after that one (DE110-6 at 8), Quintana included pages 5-8 of Carter's transcript. Then (DE110-6 at 9), Quintana skips ahead to pages 17-20, before going back to pages 13-16 immediately thereafter (DE110-6 at 10). This back-and-forth

trend persists throughout the rest of DE110-6. Her production of her other supervisor's deposition transcript follows a similar pattern. (DE110-7).

In any case, the deposition testimony to which Quintana refers to does not mean what she says it does. (AB 37). For instance, she claims her former supervisor "was not aware of any problem" with her when he became program director (AB37), as though that demonstrates that her subordinates' testimony was fabricated. But that, at most, would just mean that he was not aware of any issues with Quintana when he first came on board as program director, which is not out of the ordinary given that he was not part of that division previously.

The former supervisor was then asked if he was "aware that an investigation or AR 15 investigation [that included Quintana] had begun when you were tasked as a temporary director" in April 2016. (DE110-6 at 9). This can be found at pages 19-20 of the transcript. (DE110-6 at 10). But just as the reader is about to get to the supervisor's answer, the following page in the docket entry goes back to pages 13-16 of the transcript. (DE110-6 at 10). It is not until 3 pages later in the docket entry that one gets to page 21 of the deposition transcript and the supervisor's answer. (DE110-6 at 12).

The former supervisor explained that he did not know of the investigation at the time he was made temporary director. (DE110-6 at 12). He only came to learn of the investigation around May 2016. (DE110-6 at 12).

Further complicating the Army's ability to respond to Quintana's claim is that each page in the docket entry has three different page references. There are the district court docket page numbers at the very top, Quintana's bate stamp page numbers right below the district court's page numbering, and the individual deposition transcript page numbers of the four pages produced in each docket entry page. (*See*, *e.g.*, DE110-6 and DE110-7). This makes it all the more clear that the district court acted well within reason when it held that Quintana had not properly opposed the Army's proposed facts and deemed them uncontroverted.

But Quintana's disregard for the rules does not stop there. She also argues that, before making any alleged credibility determinations, the district court should have considered "other material in the record," which she did not refer to in her opposition, before granting summary judgment. (AB38). Quintana's argument misapprehends the rules and the district court's duties. First, Rule 56(c)(3) of the Federal Rules of Civil Procedure

states that "[t]he court need consider only the cited materials, but it *may* consider other materials in the record." Thus, the district court was only required to consider cited materials. And although it could, the district court did not have to consider other materials in the record, some of which was filed after Quintana's opposition.

For instance, Quintana references a sworn statement from one of her prior supervisors, Dallas Petersen, where he his belief that the investigation and the subordinate statements were "fabricated" and "mostly bogus." (DE130- at 1, 3). That sworn statement, however, was not included amongst the exhibits in Quintana's opposition to summary judgment. Rather it was filed two months later, in support of Quintana's opposition to a motion *in limine* from the Army. (DE130 at 1).

To make matters worse, the sworn statement was signed on September 26, 2021, *i.e.*, 60 days after Quintana filed her opposition to summary judgment. (DE130-1 at 3). Under the "sham affidavit" rule, unless a party can provide a "satisfactory explanation" for doing so, "[f]ollowing discovery, a party may not use a [post summary judgment] affidavit to contradict facts previously provided to survive summary judgment."

36

*Morales v. AC Orssleff's EFTF*, 246 F.3d 32, 35 (1st Cir. 2001) (quoting *Reyes v. Prof'l HEPA Certificate Corp.*, 74 F.Supp.3d 489, 491 (D.P.R. 2015)). Moreover, a statement under penalty of perjury that is signed after a motion for summary judgment has been filed suggests to the Court "that the statement was made solely to create an issue of fact for the purpose of surviving summary judgment." *Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc.*, 447 F.3d 105, 110 (1st Cir. 2006)." Indeed, this Court has found that the fact that an affidavit was signed just days before the filing of the party's opposition is "probative of the fact that the non-movant was merely attempting to create an issue of fact." *Id.*

Here, neither in the district court nor on appeal has Quintana attempted to provide an explanation, let alone a "satisfactory" one, for why she waited to obtain this affidavit until 12 weeks after the Army had filed its motion for summary judgment and 8 weeks after she had filed her opposition. She just expects the court to take the affidavit and the statements at face value after attempting to slip it into the summary judgment record.[3]

---

3    As previously stated, the affidavit was filed "in support of her [Quintana's] opposition to defendant's motion in limine." (DE130 at 1). This notwithstanding, despite not stating that it related to the matter of summary

But given the timeline and Quintana's failure to explain why such a critical piece of evidence, rather than being given top billing in her opposition, only came to be obtained months later.

Second, time and time again throughout her brief, Quintana claims that the district court should have considered her prior performance evaluations showing an "outstanding" rating. (AB9-13, 28, 37-38, 42, 44-46). Quintana then cites DE80 at 39 as where these performance evaluations can be found and claims the district court "erroneously assumed she did not proffer performance evaluations." (AB10). But that docket entry is the parties' previously filed Joint Pretrial Order, and the page referenced merely mentioned Quintana's proposed list of exhibits to be presented at trial, not the actual exhibits themselves. (DE80 at 39). Quintana doubles down that the performance evaluations we, in fact, included in the record before the district court. (AB44). Yet she does not provide a record citation containing said evaluations. Indeed, at one point in her brief, after citing DE80 at 39

---

judgment in the body of her motion (much less which of her arguments it supported), Quintana attempts to relate the affivadit back to the Army's motion for summary judgment and her opposition by tagging those docket entries as being related.

Quintana mentioned an "Add. F." (AB44). But DE80 does not have any attached addendums. The Army has not been able to locate this "Add. F" in the district court record. Moreover, while Quintana faults the Army for not including these performance evaluations in its exhibits, the fact of the matter is that the Army included those performance evaluation covering the period relevant to Quintana's complaint, *i.e.*, from July 1, 2015 through June 30, 2016. (DE94-5 at 73-80). This evaluation was included as part of the Army's file for the second investigation. (DE94-5). And Quintana's suggestion that the Army hid the evaluations is unsupported speculation. The Army admitted in its uncontested facts that Quintana had previously received a salary increase due to earlier performance evaluations. (DE94 at 3).

Instead, these performance evaluations make their debut on appeal in Quintana's addendum to her opening brief. (Add. 47-54). As can be clearly appreciated, contrary to the other documents in Quintana's addendum, the pages containing her performance evaluations do not have the district court's filing bate stamp at the top. (Add.47-54). This makes it plainly obvious that these documents never made their way into the record before the district court and should be stricken. Fed. R. App. P. 10(a) (explaining

that the record con appeal comprises "the original papers and exhibits filed in the district court," "the transcript of proceedings, if any," and "a certified copy of the docket entries prepared by the district clerk").

Thus, the district court acted well-within reason in not scouring the record any further, thereby doing Quintana's work for her.

**C. The district court's interchangeable use of the terms "transfer" and reassignment" did not amount to a failure to make material inferences in Quintana's favor.**

Next, Quintana takes issue with the district court's use of the word "transfer" instead of "reassignment" when referring to when she was reassigned to a non-supervisory position. (AB29-31, 40-42). According to Quintana, by using the word "transfer" instead of "reassignment," the district court "failed to make all inferences in favor of [Quintana] and made an inaccurate inference in favor of [the Army]." (AB41). The district court's use of the terms "transfer" and "reassignment" throughout its opinion, however, shows that this is a distinction without a difference. The district court used the terms "involuntary transfer" and "involuntary reassignment" interchangeably, with neither having the (dubiously) sinister connotation that Quintana would have this Court ascribe it nor a finding that this was a

desirable or irrelevant change in employment. Thus, this Court should summarily dispose of this frivolous claim.

### D. The district court properly found that Quintana had not set forth sufficient evidence to defeat summary judgment.

Finally, as has already been explained throughout this brief, the record and Quintana's procedural shortcomings show that she failed to proffer sufficient evidence to defeat summary judgment. (AB42-43). Not only did she fail to properly contest the Army's proposed statement of undisputed facts; she also failed to set forth her own set of undisputed facts with record citations supporting her propositions. In short, Quintana's blatant disregard for the rules and incomplete and confusing production of documents and record citations made the task of finding evidence raising genuine disputed facts, both for the Army and the district court, a difficult venture. And because Quintana continues to follow that same litigation tactic on appeal, this Court should follow the district court's lead and affirm the summary judgment for the Army.[4]

---

4 On appeal, the argument section in Quintana's brief utterly failed to address the merits of her claims. Instead, Quintana focuses her energy on her (unsuccessful) attempt to show that the district court improperly determined that she had failed to contest the Army's proposed facts and that

**E. Quintana's discrimination and retaliation claims fail on the merits.**

Notwithstanding all the above, as the district court found, Quintana's age, sex, and national origin discrimination claims fail on the merits. As an initial matter, Quintana contends that the district court "erroneously framed" her civil action as having stemmed from "seven alleged incidents." (AB29). According to Quintana, her civil action's sole claim relates to her supposedly unlawful reassignment (or transfer) to a non-supervisory position which was not recommended in the Second/Final AR investigation report. (AB 10, 29). The Army takes Quintana at her word and limits its argument accordingly.

Involuntary reassignment (or transfers) to less desirable positions are often treated as constructive discharges. *Lebofsky v. City of Philadelphia*, 394 F.

---

she had not set forth her own (supported) set of proposed facts. But besides outlining the general principals of discrimination law in another section of the brief and making bald assertions that she satisfied her burden, Quintana does not show how she made out a *prima facie* case of discrimination and/or retaliation. Nor does she show that the Army's legitimate, non-discriminatory reasons for its actions was pretextual. Much less does Quintana show how the district court's findings against her on the merits was erroneous. Thus, she has waived these arguments for lack of development and cannot bring them up in a reply brief. *United States v. Henry*, 848 F.3d 1, 7-10 (1st Cir. 2017).

App'x 935, 939 (3d Cir. 2010). In cases where an employer is not conducting a reduction in force, a plaintiff can make out a *prima facie* claim of discrimination by showing that: (1) she was part of a protected group; (2) she met the employer's legitimate job performance expectations; (3) she experienced an adverse employment action; and (4) the employer had a continuing need for the services provided previously by the plaintiff. *See Velázquez-Fernández v. NCE Foods, Inc.*, 476 F.3d 6, 11 (1st Cir. 2007); *Suárez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir. 2000).

Here, Quintana can show that she was part of a protected group based on her sex and age. The evidence can also support the conclusion that she suffered an adverse employment action by way of an involuntary reassignment (or transfer). And because her supervisory position was not eliminated, but rather filled by another person (a Hispanic female), the evidence can also be viewed as showing that there was a continuing need for the job Quintana previously held.

What Quintana has not and cannot do, however, is show that she was meeting the Army's legitimate job performance expectations. The record shows that the Army provided a plethora of evidence in support of its stated

43

proposition that Quintana was not meeting job expectations. With the corresponding record citations to witness testimony from Quintana's subordinates and the investigations reports, the Army showed that Quintana had an authoritative and brash leadership style that fostered a toxic work environment, which included exhibiting disrespectful and disparaging behavior towards employees and poor management. (DE94 at 4-7). In response, all Quintana could muster was to say that she had worked for the Army for over 30 years and claim that she had no prior history of poor performance evaluations or admonishments. (DE110 at 7).

To be sure, a history of favorable performance reviews and extensive experience can establish a genuine issue as to an employee's ability to meet legitimate job expectations. *See Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1092 (1st Cir. 1995) (citing *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 261 (1st Cir. 1994)). The problem here is that, as already explained, Quintana did not back any of these assertions by attaching supporting evidence as exhibits to her opposition to summary judgment. Nor did she refer the district court to any materials elsewhere in the record showing prior performance assessments. And her inclusion of such materials on appeal is too little too

late. "If there is more evidence of favorable performance reviews in the record, Quintana has failed to adequately call the [district c]ourt's attention to them." (DE163 at 19 n.9). Thus, as the district court held (DE163 at 20), Quintana has failed to satisfy her burden at the *prima facie* step with regard to her discrimination claims.

Meanwhile, to establish a *prima facie* case of retaliation, Quintana would have to demonstrate that "(1) she engaged in protected conduct; (2) she was subjected to an adverse employment action; and (3) the adverse employment action is causally linked to the protected conduct." *Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77, 94 (1st Cir. 2018). Quintana's *prima facie* falters on the third factor.

As required to establish a prima facie case of retaliation,

> [a] causal connection between a protected action and an adverse employment decision, necessary to establish a *prima facie* case of Title VII retaliation, may be established by the timing of the adverse employment decision, by evidence that the employer departed from its normal practices, or by evidence that the employer took steps to conceal the reason for its adverse employment action.

Ashworth, Bateman, et al., 21A FEDERAL PROCEDURE § 50:967 (L. Ed.).

Quintana fails to make this showing on appeal. All she does on appeal is assert (in a section of the brief outside of her argument section) that there was a causal connection between her reassignment and her protected activity because her 2014 EEO case was still pending both at the time the decision to reassign her was made and enforced in 2017. (AB26). According to Quintana, this alone is enough for "[a] fact-finding jury [to] determine [that her reassignment] was retaliatory." (AB26). But temporal proximity, "by itself, cannot show retaliatory motive. *See Skalsky v. Independent School Dist. No. 743*, 772 F.3d 1126 (8th Cir. 2014). Only when "coupled with other indicia of retaliatory conduct [temporal proximity] may be sufficient to support a finding of a causal connection." 21A FEDERAL PROCEDURE § 50:967 (citing *Randolph v. Ohio Dept. of Youth Services*, 453 F.3d 724 (6th Cir. 2006)). And here, Quintana does not point to any evidence from which one could discern a causal connection between her 2014 EEO complaint and the Army's three-year later reassignment decision. *See Calero-Cerezo v. U.S. Dep't of Just.*, 355 F.3d 6, 25 (1st Cir. 2004) (stating that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to

46

establish a prima facie case uniformly hold that the temporal proximity must be 'very close'") (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, (2001)); *see also id.* ("Three and four month periods have been held insufficient to establish a causal connection based on temporal proximity") (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) and *Hughes v. Derwinski*, 967 F.2d 1168, 1174–75 (7th Cir. 1992)).

But even if Quintana could overcome the *prima facie* hurdle as to either her discrimination or retaliation claims, they still fall flat. Where a *prima facie* showing has been made, the burden shifts to the employer to show that its purportedly discriminatory or retaliatory action was in fact the result of a legitimate non-discriminatory or non-retaliatory reason. *Vélez v. Thermo King de Puerto* Rico, Inc., 585 F.3d 441, 446 (1st Cir. 2009). If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported non-discriminatory, non-retaliatory reasons were not the true reasons, but rather a pretext for discrimination. *Id.*

Here, the Army more than ably satisfied its burden of production by filling the record with evidence showing that Quintana's reassignment (or

transfer) was due to management's "serious and substantiated concerns" regarding her management style and treatment of employees, as demonstrated by witness testimony from her subordinates and the findings in the reports from the Army's two investigations. (DE94 at 7-8). The Army also pointed to record materials showing that Quintana's lower-than-usual performance review was not due to any discriminatory or retaliatory animus, but rather because she had met certain standards but had failed to expand certain programs, which were characterized as "weak." (DE94 at 10). As for Quintana's protestations that she was never given a performance evaluation or standards for the period of June 2016 to June 2017, the Army explained, with supporting evidence, that this was the result of a failure from her then-supervisor that was widespread within his department due to a heavy workload, and not an action that solely targeted or affected Quintana. (DE94 at 11).

The Army having successfully established a legitimate, non-discriminatory and non-retaliatory reasons for Quintana's reassignment (or transfer), it was up to Quintana to show that these reasons were a pretext for discrimination. *See Santangelo v. New York Life Ins. Co.*, 785 F.3d 65, 70 (1st

Cir. 2015). To do this, "[i]t is not enough for a plaintiff merely to impugn the veracity of the employer's justification; [s]he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive.'" *Id.* (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 824 (1st Cir. 1991)). "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Gómez González v. Rural Opportunities, Inc.*, 626 F.3d 654, 662-663 (1st Cir. 2010) (citing *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). Here, Quintana wholly fails to meet her burden.

All she does on appeal is assert (in a section of the brief outside of her argument section) that a jury could "justifiably assume [the Army's] proffered reason was pretext to mask retaliation" because "the decision to reassign her was taken without any history of performance issues, nor [the] Final AR investigation report including any reassignment as a recommendation." (AB24). As previously explained, however, Quintana

provided no evidentiary support for her assertions relating to her prior performance.[5] As for her assertion that the act was discriminatory because no women were involved in the reassignment decision, Quintana fails to appreciate the relevant inquiry. The focus here is on the age and sex of her replacement, not the decision-makers. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) (to establish age discrimination, plaintiff must show that person that was promoted was significantly younger and had similar qualifications); 6 Emp. Coord. Employment Practices § 57:20; *Cham v. Station Operators, Inc.*, 685 F.3d 87, 93-94 (1st Cir. 2012) (in disparate treatment case, plaintiff must show she was treated more severely, or at least not class neutrally, as compared to others similarly situated and outside her age, sex or race protected classes).

As for the fact that a Hispanic male was also considered for the post is of no moment. First, Quintana did not supplement the record with evidence showing that individual's age, race, or qualifications. And by the time he

---

5    As to her retaliation claim, Quintana also provides no record support, besides her own bald assertions, showing that one of the supervisors she named in her 2014 EEOC complaint, William Leyh, was involved in the decision to reassign her. (AB39-40).

was even considered, Quintana's post had been occupied for months by women. (DE163 at 26 n.14). And while but-for causation is not required under the ADEA's federal-sector provision, *Babb v. Wilkie*, 140 S. Ct. 1168, 1172-1174 (2020), Quintana has altogether failed to show that age was even one of several factors that led to her reassignment. Indeed, Quintana's replacement was a Hispanic female over the age of 40, who was just 14 months younger than her.[6]

Moreover, as the district court noted in its opinion, Quintana misstated the record by claiming that a witness had testified that her reassignment "had nothing to do" with the results of the Army's second investigation. (DE110-1 at 10-11). But what the witness said was that an unrelated Army regulation "had nothing to do" with the second investigation into Quintana. (DE110-7 at 11, Transcript pages 65-66). And as the district court further explained, the fact that the Army relied in part on the results of the second

---

6    In its Opinion, the district court mistakenly reference the private-sector ADEA standard, which requires that a showing that that age was the 'but for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct. 2343, 2351 (2009). (DE163 at 26 n.14). This error is of no moment because, as stated, Quintana failed to show that age (or any other protected characteristic) was even considered in the reassignment decision.

investigation when deciding to reassign (or transfer) Quintana "is also unavailing to a showing of pretext." (DE163 at 25). In fact, the Army provided evidence showing that the reassignment decision rather than a direct result of the second investigation, was due to the "serious and substantiated concerns" about Quintana's management style. (DE94 at 7).[7]

Finally, Quintana contends (again, in a part of her brief outside of the "Argument" section) that "[a]lthough [she] must [] prove both that the [Army's] explanation is false, and that the real reason behind [its] actions was discriminatory animus," it is not necessary for her "to present additional evidence of discrimination beyond that necessary to prove that the proffered reasons are pretextual." (AB20). In support of this proposition, she cites the

---

[7]    Quintana harps on the fact that the second report did not include a recommendation that she be transferred. (AB22-24, 33).   But the Army entered record materials into evidence stating that Army leadership at Fort Buchanan was "neither bound, nor limited, by the findings or recommendations of an investigation." (DE94 at 4; DE94-27 at 15). And "[t]o boot, the first investigation's recommendations called for Quintana's transfer." (DE163 at 26; DE94-3 at 15); *see also Webber v. Int'l Paper Co.*, 417 F.3d 229, 238 (1st Cir. 2005); *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 537 (1st Cir. 1996) ("Courts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions.") (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991)).

52

Supreme Court's statement that "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if the disbelief is accompanied by a suspicion of mendacity), may, together with the elements of the *prima facie* case, permit the trier of fact to infer the ultimate fact of intentional discrimination." (AB20) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 501, 511 (1993)). The problem for Quintana is that, as the Army has shown throughout this brief and as the district court found, Quintana has no *prima facie* case to couple any factfinder's disbelief.

Simply put, even overlooking Quintana's failure to contest the Army's proposed facts and failure to put forward her own set of proposed facts (properly supported by record evidence), her claims fail on the merits. Accordingly, this Court should also affirm the district court's decision to grant summary judgment for the Army.

## CONCLUSION

Based on all the above, this Court should affirm the district court's

order granting the Army's motion for summary judgment.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 1st day of May 2023.

W. Stephen Muldrow
United States Attorney

/s/ Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division

/s/ Francisco A. Besosa-Martínez
Assistant United States Attorney
U.S. Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

**Certificate of Compliance With Rule 32(a)**

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    ☑ this brief contains <u>10,192</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), *or*

    ☐ this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☑ this brief has been prepared in a proportionally spaced typeface using <u>Book Antiqua</u> in <u>14 point</u>, *or*

    ☐ this brief has been prepared in a monospaced typeface using _____ with _____.

Dated: 5/1/2023                    /s/ Francisco A. Besosa-Martínez
                                            Signature of Filing Party

CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 1, 2023, I electronically filed the brief

with the Clerk of the Court using the CM/ECF system, which will send

notification to all attorneys of record.


/s/ Francisco A. Besosa-Martínez
Assistant United States Attorney

56